IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

EVA IRENE OWEN,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )    Case No.: 26-CV-1195-R
                                         )
CITY OF ENID, OKLAHOMA,                  )
ANTHONY SHAWN AEBI,                      )
NICOLE BINCKLEY, BARRETT                 )
SOMMER, JOHN AMES, BILLIE                )
MCKINNEY, AND BRODE PETTUS,              )
                                         )
          Defendants.                    )

**DEFENDANTS ANTHONY SHAWN AEBI AND BARRETT SOMMER'S
SPECIAL ENTRY OF APPEARANCE AND MOTION TO DISMISS**

Pursuant to FED. R. CIV. P. 12(b)(6), Defendants Anthony Shawn Aebi and Barrett

Sommer hereby move this Court to dismiss all claims asserted against them by Plaintiff, Eva

Irene Owen. First, Plaintiff's allegations fail to establish a constitutional deprivation by these

officers, and they are therefore immune from liability under the qualified immunity doctrine.

Further, the alleged facts show Defendants had probable cause for the arrest of Plaintiff.

Additionally, there was no favorable termination of the underlying criminal prosecution on

the merits in Plaintiff's favor.  A dismissal without prejudice is not sufficient under

Oklahoma law.  Thus, her claims for false arrest/imprisonment and malicious prosecution fail

as she cannot establish the requisite elements of those claims.

## INTRODUCTION

This matter stems from the arrest of Plaintiff in Enid, Oklahoma on July 5, 2024. (Petition, ¶1). Defendants were called to Plaintiff's home that day and eventually made contact with Plaintiff while in the process of arresting Plaintiff's husband, William Owen. (Petition, ¶ 18). During this time, Plaintiff exhibited volatile behavior, continually yelling at the responding officers. (Petition, ¶ 19-22). Accordingly, Plaintiff was warned to stop this behavior, but she chose to continue. *Id*. Thereafter, Officer Aebi briefly spoke with Plaintiff's neighbor – the individual who had contacted law enforcement regarding the incident – and confirmed that Plaintiff's conduct was disturbing nearby residents. (Petition, ¶ 23). Plaintiff was then informed she was under arrest, but she pulled away from the officers and stated "no." (Petition, ¶ 24)(*See also* Probable Cause Affidavit, **EXHIBIT 1**)[1]. The officers then took hold of Plaintiff's arm, placed it behind her back, utilized a compliance technique, placed Plaintiff on the ground, placing her under arrest for disturbing the peace and resisting arrest. (Petition, ¶¶ 24-25). Subsequently, Plaintiff was charged with Disturbing the Peace and Obstructing an Officer. (Petition, ¶ 27). However, the State filed a Motion to Dismiss its claims against Plaintiff without prejudice. (Petition, ¶ 29)(*See also* Dismissal with Prejudice, **EXHIBIT 2**).

---

[1]Plaintiff cites the Affidavit of Probable cause in her Petition at ¶22. Further, Plaintiff cites the Dismissal Without Prejudice of the underlying criminal proceeding in ¶¶27 and 29. Thus, Plaintiff is on notice of the contents of the same, and the documents are central to the claims asserted by Plaintiff in this matter. Furthermore, these are public records of which the Court should take judicial notice. Accordingly attaching the same as exhibits to this Motion is proper under FED. R. CIV. P. 12(b)(6). *Van Woudenberg ex. rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)(Abrogated on other grounds)("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."); *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to plaintiff's claim and the parties do not dispute the document's authenticity.")

In this instance, the only direct allegation against Officer Aebi and Sommer is contained within ¶24, which provides:

> Officer Aebi told Plaintiff that she was under arrest. Plaintiff told Officer Aebi "no" and began backing away. Officer Aebi grabbed Plaintiff's arm and tried to pull it around behind her back. Officer Aebi proceeded to twist Plaintiff's arm behind her back to be handcuffed. Officer Aebi spun Plaintiff to the ground. Officer Sommer and Officer Aebi held her face down until they placed her in handcuffs.

This allegation, however, is not sufficient to establish a constitutional violation. Officer Aebi and Sommer used reasonable force to detain Plaintiff - nothing more. As such, Plaintiff's allegations fail to show a clear violation of constitutional law and her claims against these officers is therefore barred under the qualified immunity doctrine.

Furthermore, Plaintiff's own allegations establish there was probable cause for her arrest. Plaintiff attempted to obstruct officers during the arrest of her husband, and continued to yell that she had power of attorney and they were disabled veterans. When the officers attempted to de-escalate, Plaintiff continued to yell despite instructions to cease or else she would be placed under arrest for disturbing the peace. Plaintiff still did not stop, and her neighbor, who initiated the call at issue, confirmed he was disturbed by Plaintiff's conduct. Accordingly, Plaintiff was arrested and charged with disturbing the peace.

These facts establish the responding officers had probable cause to arrest Plaintiff for disturbing the peace. Thus, Plaintiff cannot establish essential elements of her claim for false arrest/imprisonment or malicious prosecution. Furthermore, the underlying criminal proceeding was not terminated on the merits in Plaintiff's favor. A dismissal without

prejudice is insufficient to establish this required element of a claim for malicious prosecution.  Accordingly, Plaintiff's state law claims fail as a matter of law.

### STANDARD OF REVIEW

"Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro Inc.*, 929 F.Supp. 562, 567 (D.R.I.1996).  As such, the purpose of a Rule 12(b)(6) motion is not to test the underlying facts of the case, but to test the law that governs the plaintiff's claims.  *Weise v. Casper*, 507 F.3d 1260, 1270 (10th Cir. 2007) ("a motion to dismiss raises only a question of law: whether, taking the facts in the complaint as true, the plaintiff has a legal claim"). "When determining whether to grant a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *In re Ferro Corp. Derivative Litigation*, 511 F.3d 611, 617 (6th Cir. 2008) (citation omitted). To avoid dismissal under Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The District Court should sustain a motion to dismiss where the complaint fails to do so. *Id.*

It is true that FED.R.CIV.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). This standard, however, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Unsupported, formulaic allegations will not defeat a Rule 12(b)(6) request for dismissal. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal* at 678 (internal quotation marks omitted; brackets in original). "Without some factual allegations in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly* at 556, n. 3. Said differently, a claim should be dismissed when it lacks a cognizable legal theory of liability, when the facts pled do not support any such theory, or when the allegations set forth are not facts but are, instead, conclusions without factual support. *Id*.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**PROPOSITION I: PLAINTIFF'S PETITION DOES NOT ALLEGE FORCE SO CLEARLY EXCESSIVE THAT EVERY REASONABLE OFFICER WOULD HAVE KNOWN IT VIOLATED CLEARLY ESTABLISHED LAW**

Excessive force is statutorily defined as "physical force which exceeds the degree of physical force permitted by law. The use of excessive force shall be presumed when a peace officer continues to apply physical force in excess of the force permitted by law to a person

5

who has been rendered incapable of resisting arrest." 22 O.S. § 34.1(B). However, "[i]f police officers were exposed to suit every time the risk of harm inherent in an arrest culminated in actual harm, law enforcement would grind to a halt." *Morales v. City of Okla. City ex rel. Okla. City Police Dep't*, 2010 OK 9, ¶ 25, 230 P.3d 869, 880. In other words, the use of force, and the potential for resulting injury, is an unavoidable consequence of effectuating an arrest—especially where a suspect refuses to comply. Consistent with this principle, the Fourth Amendment does not prohibit force simply because it results in injury; rather, the inquiry is whether the force used was objectively reasonable under the circumstances.

"A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Id.* When applying this standard, the officer's subjective mistake of fact or law is irrelevant. Additionally, whether the officer is acting in good faith or bad is irrelevant. "The question is whether the objective facts support the degree of force employed." *Id.*

Further, "[g]overment officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026). "'A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"" *Id.* (*quoting Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S. Ct. 4, 211 L. Ed. 2d 164 (2021)). In order to find

a right is clearly established, courts need to identify a case where a similar set of circumstances in which an officer violated the Constitution. *Id.* However, this discovered precedent must define the right with a "'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (*quoting District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018)).

In *Zorn*, protestors occupied the legislative chamber of the Vermont capitol and refused to leave after officers warned they would be arrested for trespassing. *Zorn*, 146 S. Ct. at 929. Officers then began removing protestors from the chambers, some by force. *Id.* The defendant officer then approached the plaintiff, who refused to stand up, remaining seated with her arms interlocked with other protestors. *Id.* Accordingly, the officer proceeded to unlink the plaintiff's arm, put it behind her back in wristlock, then twisted her arm. *Id.* The plaintiff, stating "ow, ow, ow" still refused to stand and was continually asked to do so. *Id.* Then, the officer "placed pressure on her wrist and lifted her up by her underarm." *Id.* The plaintiff again yelled in pain, then fell back to the floor. *Id.* She was then carried out by three officers. *Id.*

The Supreme Court took up the case on appeal after the Second Circuit reversed the District Court's ruling that the officer was entitled to qualified immunity. The Second Circuit utilized *Amnesty America v. West Hartford*, 361 F.3d 113 (2004), to find the officer's conduct constituted excessive force. Notably, the Supreme Court found that the Second

Circuit "contravened" the above listed principles. *Id.* at 930. "Whether any particular use of force violates the Fourth Amendment depends on 'the facts and circumstances of each particular case,' including whether the officer gave 'warnings' before using force." *Id.* at 930. The Supreme Court stated "[r]easonable officials would not 'interpret [Amnesty America] to establish' that using a routine wristlock to move a resistant protestor after warning her, without more, violates the Constitution." *Id.* at 931. The Supreme Court specifically noted the officer repeatedly warned the plaintiff before escalating force and used the wristlock only after she refused commands to comply. *Id*. Accordingly, the Court held the officer was entitled to qualified immunity because no prior case clearly established that such conduct violated the Fourth Amendment. *Id*.

Here, Plaintiff's own allegations establish that officers were attempting to control an escalating and noncompliant encounter. According to the Petition, Plaintiff was yelling prior to the arrest and was instructed by officers to stop. (Petition, ¶ 19). Plaintiff further admits she continued to yell. (Petition, ¶22). Thereafter, Plaintiff was informed she was under arrest. Rather than complying, Plaintiff allegedly responded "no" and began backing away from the officer. (Petition, ¶ 24). Only then did the officer allegedly grab Plaintiff's arm and attempt to place it behind her back for handcuffing. The Petition therefore established these events occurred during an active arrest situation involving noncompliance and physical resistance. (*See also* Probable Cause Affidavit, **EXHIBIT 1**).

Plaintiff further alleges that, after being taken to the ground, she complained of wrist pain and that an officer acknowledged utilizing a "pain compliance technique" on Plaintiff's hand during the handcuffing process. (Petition, ¶ 25). Even accepting these allegations as true, they do not plausibly establish a violation of clearly established law. Importantly, the Petition itself establishes that the challenged force occurred during officers' efforts to gain control of and handcuff a resistant arrestee. Thus, the alleged use of pain-compliance techniques occurred in the course of attempting to secure Plaintiff, not after she had fully submitted or while she was compliant.

Moreover, the Supreme Court recently reiterated that pain-compliance techniques such as a wristlock are not per se unconstitutional because they result in pain or even injury. The Supreme Court emphasized that the relevant inquiry is whether clearly established precedent would have placed the unlawfulness of the officers' conduct beyond debate under the particular circumstances confronting them. In this case, Plaintiff has failed to allege any such precedent establishing the conduct as unlawful beyond debate. Accordingly, even taking the Plaintiff's allegations as true, the Petition fails to establish conduct that violated clearly established law, and the individual officers are entitled to qualified immunity.

**PROPOSITION II:**     **PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE ARREST OR FALSE IMPRISONMENT**

"False arrest has been defined as 'an unlawful restraint of an individual's personal liberty or freedom of locomotion. . . An arrest without proper legal authority is a false arrest and because an arrest restrains the liberty of a person it is also a false imprisonment.'"

*Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, ¶ 6, 50 P.3d 1149, 1151. Further, the Court of Civil Appeals has held that an arrest without probable cause is a false arrest. *Overall v. State*, 1995 OK CIV APP 107, 910 P.2d 1087. "'Probable cause' is defined as 'reasonable cause' or 'an honest suspicion or belief . . . founded upon facts sufficiently strong to warrant the average person in believing the charge to be true,' and the existence of probable cause is a complete defense." *Roberts*, 50 P.3d at 1152. Further, plaintiff does not actually have to be guilty of the charged crime. Instead, "[w]hether probate [*sic*] cause exists is not the same question as whether the person accused is actually guilty." *Missouri, Kansas & Oklahoma Coach Lines v. Meister*, 1958 OK 227, ¶ 5, 330 P.2d 579, 581–82. Moreover, Oklahoma law explicitly provides for an officer to arrest an individual without a warrant. 22 O.S. § 196. This statute provides in pertinent part:

> A peace officer may, without a warrant, arrest a person:
>
> 1.  For a public offense, committed or attempted in the officer's presence;

*Id.*

Lastly, false imprisonment is distinct from a false arrest. It does not require a form of legal authority, but may occur between private persons. *Delong v. State ex rel. Okla. Dep't of Pub. Safety*, 1998 OK CIV APP 32, ¶ 4, 956 P.2d 937, 938. "The essential elements of the tort are (a) the detention of a person against his (or her ) will and (b) the unlawfulness of the detention." *Walters v. J. C. Penney Co.*, 2003 OK 100, ¶ 9, 82 P.3d 578, 583.

Here, Plaintiff's own Petition establishes the officers possessed legal authority and probable cause to effectuate the arrest at issue. According to the allegations, Plaintiff was yelling at the officers as they went about arresting her husband, and she was even instructed to stop yelling.(Petition, ¶19). As such, Plaintiff's actions were clearly taking place in the presence of the officers. Thus, by Plaintiff's own allegations, officers were confronted with a raucous individual who had been instructed to lower her voice.

Further, the Petition contains no factual allegations plausibly demonstrating the arrest lacked probable cause or legal authority. Nor does Plaintiff allege facts establishing that officers detained her without statutory authority under Oklahoma law. Instead, the Petition affirmatively establishes that officers acted pursuant to their law enforcement authority while reacting to Plaintiff's conduct occurring in their presence. Accordingly, because probable cause constitutes a complete defense to claims for false arrest and false imprisonment, and because Plaintiff's own allegations establish the officers acted with legal authority in effectuating the arrest, Plaintiff's claims fail as a matter of law.

**PROPOSITION III:** **PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION FAILS AS A MATTER OF LAW**

A claim for malicious prosecution places a burden on the plaintiff to prove: "1) that the defendant maliciously instituted the action; 2) without probable cause; 3) which the plaintiff successfully defended; and 4) with resulting damage to the plaintiff." *Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, ¶ 6, 50 P.3d 1149, 1152. Accordingly, should the Plaintiff fail to meet any of these elements, their claim for malicious

prosecution fails. Additionally, "[m]alicious prosecution actions are not favored by the court, and they should not be encouraged by lax rules favoring them." *Young v. First State Bank, Watonga*, 1981 OK 53, ¶ 5, 628 P.2d 707, 709; *see also Williams v. Frey*, 182 Okl. 556, 78 P.2d 1052 (1938) (adopting a rule "that [makes it] less likely to encourage actions for malicious prosecution"); and *See Glasgow v. Fox*, 1988 OK 71, ¶ 14, 757 P.2d 836, 839 ("Oklahoma[] . . . does not look favorably on malicious prosecution actions"). In this instance, the City of Enid is immune from liability for malicious prosecution. Further, Plaintiff cannot establish at least two essential elements of her cause of action against the officers: 1) lack of probable cause and 2) a successful defense of the claim. Thus, dismissal of Plaintiff's claim for malicious prosecution against Defendants is appropriate.

### A.    THE OFFICERS HAD PROBABLE CAUSE

As mentioned above, "'Probable cause' is defined as 'reasonable cause' or 'an honest suspicion or belief . . . founded upon facts sufficiently strong to warrant the average person in believing the charge to be true,' and the existence of probable cause is a complete defense." Roberts, 50 P.3d at 1152. The existence of probable cause, alone, is enough to serve as a "complete defense." *Towne v. Martin*, 196 Okl. 510, 166 P.2d 98 ("[p]robable cause for the prosecution of a person constitutes a complete defense to an action [malicious prosecution].") *See Lewis v. Crystal Gas Co.*, 1975 OK 26, ¶ 11, 532 P.2d 431, 433 ("Upon proof of probable cause other elements such as malice . . . are immaterial."). Further, plaintiff does not actually have to be guilty of the charged crime. Instead, "[w]hether probate [*sic*]

cause exists is not the same question as whether the person accused is actually guilty." *Missouri, Kansas & Oklahoma Coach Lines v. Meister*, 1958 OK 227, ¶ 5, 330 P.2d 579, 581–82. At the end of the day, probable cause is the "keystone" element. If probable cause existed, a claim for malicious prosecution must fail.

Here, Plaintiff's own allegations establish that Officer Aebi possessed, at a minimum, an honest and reasonable belief that Plaintiff was committing a breach of the peace in his presence. Specifically, Plaintiff admits she was yelling at officers while they were actively investigating the incident on scene. (*See* Petition ¶ 19). Plaintiff further acknowledges she was instructed to stop yelling, yet nevertheless continued her conduct. (*See* Petition ¶ 22). Thereafter, Officer Aebi turned to the Plaintiff's neighbor – the individual who called the police – and confirmed with him that Plaintiff's yelling was disturbing him. (*See* Petition ¶ 23).

Under these circumstances, Officer Aebi was not required to determine beyond all doubt that Plaintiff had committed an offense. Nor was he required to wait for the situation to escalate further before taking action. Instead, the law only required facts "sufficiently strong to warrant the average person in believing the charge to be true." *Roberts*, 50 P.3d at 1152. Plaintiff's own allegations establish precisely that.

Officer Aebi was confronted with an individual who: (1) was loudly yelling at officers on scene; (2) continued doing so after being instructed to stop; and (3) was confirmed by a nearby resident to be causing a disturbance. These facts plainly gave rise to, at a minimum,

a reasonable suspicion and honest belief that Plaintiff was engaging in disorderly or peace-disturbing conduct. Accordingly, probable cause existed as a matter of law.

    **B.**    **PLAINTIFF CANNOT ESTABLISH A FAVORABLE TERMINATION OF THE UNDERLYING PROSECUTION**

One of the essential elements of a malicious prosecution claim is that the plaintiff must have successfully defended against the underlying proceeding. *Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, ¶ 6, 50 P.3d 1149, 1152. However, the Oklahoma Supreme Court has held that a case which is dismissed without prejudice is not a termination of the suit in favor of the party seeking the malicious prosecution claim. *Glasgow v. Fox*, 1988 OK 71, ¶ 15, 757 P.2d 836, 839. Again, the courts do not favor malicious prosecution actions, noting they should not be encouraged by lax rules. *Young v. First State Bank, Watonga*, 1981 OK 53, ¶ 5, 628 P.2d 707, 709. The *Glasgow* Court found that a dismissal without prejudice "provides a litigant the opportunity to dismiss an action without being foreclosed from bringing the action at another time." *Glasgow*, 757 P.2d at 839. Accordingly, "to allow the voluntary dismissal to form the basis for a malicious prosecution action would allow a person to recover for the bringing of an action which may eventually be found to be well-brought." *Id.* "Such a result would be inconsistent with Oklahoma's policy which does not look favorably on malicious prosecution actions." *Id.*

Here, the State filed a Motion to Dismiss seeking to dismiss the case against the Plaintiff without prejudice. (*See* Petition ¶ 29 and Dismissal Without Prejudice, **EXHIBIT 2**). Accordingly, the case against the Plaintiff was never fully presented on the merits. Nor was

there any adjudication establishing Plaintiff's innocence or otherwise vindicating her regarding the underlying charge. Instead, the dismissal merely terminated the proceeding procedurally while preserving the State's ability to refile the charge at a later time. Under Oklahoma law, such a dismissal cannot satisfy the successful defense element required to sustain a malicious prosecution claim. As the Oklahoma Supreme Court explained in *Glasgow*, a dismissal without prejudice does not determine the substantive rights of the parties and therefore does not constitute a termination in favor of the accused. The underlying proceeding was dismissed without prejudice. Thus, the prosecution was not terminated in a manner sufficient to support a malicious prosecution claim under Oklahoma law. As such, Plaintiff cannot establish this essential element and her claim fails as a matter of law.

## CONCLUSION

Plaintiff's Petition fails to state a constitutional violation against these Defendants. Furthermore, Plaintiff cannot establish the essential elements of her claims for false arrest/imprisonment and malicious prosecution.  Accordingly, dismissal is proper.

Respectfully submitted,

s/ *Timothy J. Prentice*
Timothy J. Prentice, OBA No. 22689
Ryan C. Henneke, OBA No. 36659
ROBERSON, KOLKER, PRENTICE, BURNS, P.C.
16408 Muirfield Place
Edmond, Oklahoma 73013
Telephone:    405-606-3333
Facsimile:    405-606-3334
Email:         tj@OKTrialLawyers.com
               rch@OKTrialLawyers.com
ATTORNEYS FOR DEFENDANTS

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Ronald "Skip" Kelly, Esquire

s/ *Timothy J. Prentice*
For the Firm
